## STATE v. GEORGE DUBESTEIN.[1]

### April 20, 1917.

### Nos. 20,283—(7).

**Criminal law — homicide — self defense.**

The homicide was admitted and the finding of the jury to the effect that defendant was not acting in justifiable self defense when he committed it is fully sustained by the evidence.

[1]Reported in 162 N. W. 358.
136 M.—22

Defendant was indicted by the grand jury of the crime of murder in the first degree, was tried in the district court for Hennepin county before Molyneaux, J., and convicted by the jury of the crime of manslaughter in the first degree. Defendant's motion for a new trial was denied. From the judgment of conviction and from an order denying his motion for a new trial, defendant appealed. Affirmed.

*Hymen Z. Mendow* and *Ginsberg & Cary,* for appellant.

*Lyndon A. Smith,* Attorney General, and *John M. Rees,* County Attorney, for respondent.

TAYLOR, C.

Defendant shot and killed one Lawrence Herman, and upon his trial therefor was convicted of the crime of manslaughter in the first degree. He made a motion for a new trial and appeals from an order denying this motion and from the judgment.

No complaint is made concerning the rulings of the court during the trial, or the instructions given to the jury. The defendant admitted shooting the deceased, but sought to justify the homicide on the ground that he was acting in justifiable self defense when he committed it. He rests his appeal upon the claim that the evidence did not warrant the jury in finding that the shooting was unjustifiable.

The defendant entered a pool hall where he found Lawrence Herman and Max Brooks playing billiards. He knew that Herman and Brooks entertained ill-will toward him, and had been informed that Herman had made threats against him. After some aggressive words on the part of Herman, defendant went to the rear of the pool hall, passed through a door into a passage or entryway and through another door into the alley at the rear of the building. Herman followed some 6 or 8 feet behind him, and Brooks also followed some 10 or 12 feet behind Herman. While Brooks was still in the entryway and before he had reached the door opening into the alley, Herman came running back into the entryway, and went past Brooks to the door opening into the pool hall where he partly turned. At this time defendant, who with a revolver in his hand had followed Herman into the entryway, fired the fatal shot. The foregoing is taken from the account of the occurrence given by Brooks who did not see what took place in the alley. The driver of a

delivery truck who had driven into the alley, and an employee of an electric company who was upon a platform at the rear of another building, saw and related what took place in the alley. Their accounts differ in some details. Both agree, however, that Herman started to use his fists upon defendant; that defendant drew a revolver and snapped it at Herman but it did not go off; that Herman jumped to one side and ran back and disappeared in the entryway; that defendant followed him to or through the door of the entryway, and that they then heard a shot. The foregoing are the salient facts as related by the eye witnesses. Defendant's own account of the occurrence does not differ materially, but he lays stress upon the fact that Herman was a much more powerful man than he; that Herman had made threats against him and bore a bad reputation; and that he believed Herman to be armed. If Herman possessed a weapon, of which there is no evidence except defendant's assertion, he did not have it in his hands while in the alley, nor make any attack with it upon defendant.

The evidence was ample to warrant the jury in finding that the homicide could not be justified on the ground that the defendant was acting in self defense at the time he fired the fatal shot. Both the order and the judgment are affirmed.